IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACOB F. COLOMBIN,)
)
       Plaintiff,)
)
  -vs-                                       )           Civil Action No.   16-311
)
CAROLYN W. COLVIN,)
COMMISSIONER OF SOCIAL SECURITY,)
)
       Defendant.)

AMBROSE, Senior District Judge

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (ECF Nos. 9 and 11). Both parties have filed Briefs in Support of their Motions. (ECF Nos. 10 and 12). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment (ECF No. 11) and denying Plaintiff's Motion for Summary Judgment. (ECF No. 9).

### I. BACKGROUND

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security insurance benefits under the Social Security Act ("Act"). Plaintiff filed his applications alleging he had been disabled since October 30, 2010. (ECF No. 7-7 pp. 4, 14) Administrative Law Judge ("ALJ"), Charles Pankow, held a hearing on June 6, 2014, at which Plaintiff was represented by counsel. (ECF No. 7-2, pp. 26-49). On August 26, 2014, the ALJ found that Plaintiff was not disabled under the Social Security Act. (ECF No. 7-2, pp. 12-25).

1

After exhausting all of his administrative remedies thereafter, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (ECF No. 9 and 11). The issues are now ripe for review.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520(a), 416.920(a). The

ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520; 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### B. Listing 12.05C

Plaintiff's first argument is that the ALJ erred in failing to properly consider whether Plaintiff's intellectual deficits met or equaled the requirements of Listing 12.05C. (ECF No. 10, pp. 10-14). At step two of the analysis, an ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520(a); 416.920(a). An impairment is not severe if it does not significantly limit the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521(a); 416.920(c), 416.1521(a). If a claimant is found to have a severe impairment, then the ALJ proceeds to the next step. 20 C.F.R. §§ 404.1520(a); 416.920(a).

3

In this case, the ALJ found that Plaintiff had severe impairments. (ECF No. 7-2, p. 14). The ALJ then proceeded to the next step. *Id.* at pp. 21-36. In step three of the analysis, the ALJ must determine if the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, subpt. P, app'x 1. *Jesurum v. Secretary of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995). An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. *Burnett v. Commissioner,* 220 F.3d 112, 119 (3d Cir. 2000).

At issue in this case is Listing 12.05 (intellectual disability). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. Listing 12.05 – Intellectual Disability provides:

> Intellectual disability refers to significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>   1. Marked restriction of activities of daily living; or
>   2. Marked difficulties in maintain social functions; or
>   3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P., app. 1 §12.05. As the disjunctive language of the Listing indicates, the required level of severity for this disorder is met when the requirements of the introductory paragraph and paragraphs A, B, C *or* D of the Listing are satisfied.

Plaintiff contends the ALJ erred in finding that he did not satisfy Part C of Listing 12.05. (ECF No. 10, at 10-18). As set forth above, to satisfy Part C, Plaintiff must have: 1) significantly subaverage intellectual functioning with deficits in adaptive behavior initially manifested during developmental period (i.e., before age 22); 2) a valid verbal, performance, or full scale IQ of 60 through 70, <u>and</u> 3) a physical or other mental impairment imposing an additional and significant work-related limitation or function. 20 C.F.R. pt. 404, subpt. P., app. 1 §12.05C; *Williams v. Sullivan*, 970 F.2d 1178, 1184 (3d Cir. 1992). Plaintiff suggests that he meets said criteria. (ECF No. 10, pp. 10-18). The ALJ found, however, as follows:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant was administered the Wechsler Intelligence Scale for Children in April 2000 and he scored 82 in verbal IQ, 69 in performance IQ, and 73 in full scale IQ (Exhibit 1F). However, the undersigned notes that these IQ scores were rendered when the claimant was fourteen years old and are not a valid indication of the claimant's cognitive functioning. Further, there is no evidence of deficits of adaptive functioning. For instance, the claimant reported that he prepares meals, performs household chores, has no problems with personal care and grooming, attends GED instructional classes, and uses the computer.

(ECF No. 7-2, at 17). After a careful review of the record, I find there is substantial evidence of record to support the ALJ's decision that Plaintiff did not meet the listing criteria.

Contrary to Plaintiff's argument otherwise, Plaintiff did not produce evidence of a current valid IQ score of 60-70. According to the Program Operations Manual System (POMS), "IQ scores tend to stabilize by the age of 16. Regardless of the claimant's age at adjudication, reliable IQ testing obtained at age 16 or older is valid to support the IQ findings required under

5

listing 12.05." POMSDI 24515.020(c)(5)(a); *see also* 20 C.F.R. pt. 404, subpt. P., app. 1 §112.00(d)(1) ("IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above."). As the record reveals, Plaintiff was 24 at the time of his applications, and the IQ scores produced by Plaintiff were from 1990 and 2000, before Plaintiff was 16 years old. Such evidence might be indicative of deficits in adaptive behavior initially manifested during developmental period (*i.e.*, before age 22), but they do not constitute valid current IQ scores. POMSDI 24515.020(c)(5)(a); *see also* 20 C.F.R. pt. 404, subpt. P., app. 1 §112.00(d)(1); *Smith v. Colvin*, Civil Action No. 15-1426, 2016 WL 6729120, at **2-3 (W.D. Pa. Nov. 15, 2016); *Miller v. Astrue,* Civil Action No. 10-1353, 2011 WL 2580516, at *6 (W.D. Pa. June 28, 2011).

Plaintiff further suggests that the ALJ should have more fully developed the record by requesting formalized IQ testing. (ECF No. 10, at 11). I disagree. The regulations make clear that it is the plaintiff's burden to prove that he is disabled, which means the plaintiff has the duty to provide medical and other evidence showing that he has an impairment and how severe it is. 20 C.F.R. §§ 404.1512(a-c), 416.912(a-c). This burden does not shift to the ALJ.

Nonetheless, an ALJ has the duty to develop the record sufficiently to make a determination of disability. *Ventura v. Shalala,* 55 F.3d 900 (3d Cir. 1995); 20 C.F.R. §§ 404.1512(d), 416.912(d). Usually, the issue of whether an ALJ had developed the record fully arises in situations involving a *pro se* claimant where the duty is heightened. *Early v. Heckler,* 743 F.2d 1002 (3d Cir. 1984). Such is not the case here. "When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits." *Yoder v. Colvin,* No. 13-107, 2014 WL 2770045, *3 (W.D. Pa. June 18, 2014) (citing *Lofland v. Astrue,* No. 12-624, 2013 WL 3927695,

*17 (D. Del. July 24, 2013)). Plaintiff was represented by counsel at the hearing, yet, during the hearing, his counsel did not ask the ALJ to order a current IQ test on Plaintiff's behalf or to keep the record open to secure an IQ test. (ECF No. 7-2, at 25-48). Rather, Plaintiff's counsel cited the 2000 IQ scores in support of his 12.05C argument. *Id.* at 46. In addition, the record reflects that the Social Security Administration scheduled a mental status examination of Plaintiff at the initial determination level based on his allegations of severe mental health symptoms, but that Plaintiff asked that the examination be cancelled and a determination be made based on the medical evidence in the file. (ECF No. 7-3, at 73, 79).

Ultimately, the decision whether to order a consultative examination or additional testing is within the discretion of the ALJ, and I must defer to that decision where the record as a whole contains sufficient evidence for the ALJ to make a determination. *See* 20 C.F.R. §§ 404.1517, 404.1519a, 416.917, 416.919a; *Veite v. Astrue*, No. 11-28, 2011 WL 6780655, at *10 (W.D. Pa. Dec. 27, 2011). Based on my review of the record, I find there was sufficient evidence for the ALJ to determine that Plaintiff did not meet the requirement of Listing 12.05C that requires a valid verbal, performance, or full scale IQ of 60 through 70. (ECF No. 7-2, 14-22, and evidence cited therein). Therefore, I find the ALJ did not have a duty to develop the record further, and remand is not warranted on this issue.

Plaintiff additionally faults the ALJ for failing to accept, reject, or contradict by contrary medical evidence, the findings of psychiatrists Donald Breneman and Gowri Arul. (ECF No. 10, at 14-17). Dr. Breneman evaluated Plaintiff on January 12, 2011, and Dr. Arul treated Plaintiff during a brief hospital stay in October 2011. (ECF No. 7-12, Exs. 5F, 9F). This argument is unpersuasive. The amount of weight afforded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician "since these

7

sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* §§ 404.1527(c)(2); 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* §§ 404.1527(c)(4); 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir.2000) (quoting *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir.1999)). However, "where ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or the wrong reason." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).

As an initial matter, neither Dr. Breneman's nor Dr. Arul's brief treatment records discuss or concern Plaintiff's IQ scores. (ECF No. 7-12, Exs. 5F, 9F). Thus, the records have no bearing on the fact that Plaintiff failed to meet the 12.05C requirement of a valid verbal, performance, or full scale IQ of 60 through 70. Similarly, neither doctor opines on Plaintiff's

8

ability to work or perform work-related activities. *Id.* Moreover, and in any event, the ALJ adequately addressed Dr. Breneman's and Dr. Arul's records in his opinion. (ECF No. 7-2, at 14-22 (frequently citing Exs. 5F & 9F)). As Plaintiff acknowledges in his brief, the ALJ expressly mentions Dr. Breneman's notes, including Dr. Breneman's comments that Plaintiff demonstrated no signs of undue anxiety or depression, but appeared to show a significant degree of immaturity and lack of drive. *See id.* at 18 (citing Ex. 5F). Likewise, the ALJ specifically discusses Plaintiff's October 11-14, 2011 hospital stay, and Dr. Arul's related notes, stating that although Plaintiff was admitted to the hospital for depression and suicidal ideation, he was stable upon discharge and repeatedly denied any suicidal or homicidal thinking. *Id.* at 16 (citing Ex. 9F). The ALJ also directly discusses Plaintiff's range of GAF scores, noting that the higher GAF scores of 60 were supported by clinical findings, where the lower scores ranging from 30 to 50 were inconsistent with the record as a whole, including Plaintiff's activities of daily living. *Id.* at 22 (citing Exs. 5F, 9F, and numerous additional exhibits). Even if the ALJ's discussion of the records at issue was inadequate, which it was not, nothing in those records demonstrates that Plaintiff's mental impairments constituted an intellectual disability within the meaning of Listing 12.05. For all of these reasons, the ALJ did not err in weighing the medical evidence of record in evaluating Plaintiff's mental health impairments, and substantial evidence supports his conclusions in this regard.

### C. **RFC Finding**

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that Plaintiff was limited to unskilled work and required a low stress environment such that there are few changes in work setting and no fast pace or quota production standards. The ALJ further restricted Plaintiff to occasional contact with coworkers and supervisors and no contact with the general public. (ECF No. 7-2, at 17-22). The ALJ concluded that, considering his age, education, work experience,

and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. *Id.* at 23-24.

Plaintiff argues that the ALJ's RFC analysis is deficient because, although the ALJ gave significant weight to the opinion of state agency consultant Arlene Rattan, Ph.D., his RFC finding failed to account for the moderate limitations found by Dr. Rattan, including moderate limitations on Plaintiff's ability to interact appropriately with the general public, get along with co-workers or peers, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. ECF No. 10, at 17-19 (citing ECF No. 7-3, Ex. 1A). This argument is without merit.

The responsibility for deciding a claimant's RFC rests with the ALJ and is based on the entire record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. State agency physicians and psychologists such as Dr. Rattan are considered to be "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," and the ALJ must consider their findings as opinion evidence. *Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 93 n.2 (3d Cir.2007). The final responsibility for determining a claimant's RFC, however, is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 404.1527(e)(2), (e)(3), 416.927(e)(2), (e)(3).

Here, there is no evidence that the ALJ rejected the limitations noted by Dr. Rattan. Rather, the ALJ expressly accepted Dr. Rattan's conclusion that Plaintiff was "able to meet the basic mental demands of competitive work on a sustained basis *despite* [those limitations]." (ECF No. 7-2, at 21; ECF No. 7-3, Ex. 1A); *see also* ECF No. 7-3, Ex. 1A at 8 (Dr. Rattan further opining that Plaintiff "can function in production oriented jobs requiring little independent decision making"). In addition, the RFC incorporates Plaintiff's credibly established limitations related to his mental impairments, including: a limitation to unskilled work; a low stress environment such that there are few changes in work setting and no fast pace or quota production standards; and a

restriction to occasional contact with coworkers and supervisors and no contact with the general public. (ECF No. 7-2, at 17-22). To the extent Plaintiff claims additional limitations, the ALJ pointed to substantial evidence – including the objective medical evidence, treatment records, Plaintiff's activities of daily living, and Plaintiff's own statements – supporting his conclusion that the record did not support the degree of symptoms alleged. (ECF No. 7-2, at 18-22 and exhibits cited therein).

Plaintiff's further argument that the ALJ's hypothetical question to the vocational expert was deficient fails for the same reasons set forth above. The substantial evidence cited above shows that the hypothetical question on which the ALJ relied (ECF No. 44-45) accurately reflected Plaintiff's impairments. Furthermore, although the vocational expert stated that Plaintiff would not be able to perform any work if he would regularly miss work two days per week, due to fatigue, malaise, psychiatric and psychological symptomology, there was no evidence of record indicating that Plaintiff would, in fact, regularly miss work for these reasons. Consequently, I find this argument to be unpersuasive in this regard.

Because the ALJ properly accounted for Plaintiff's moderate mental limitations in his hypothetical question to the VE and in formulating his RFC, substantial evidence supports the RFC finding, and remand on this point is unwarranted.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACOB F. COLOMBIN,)
)
        Plaintiff,)
)
  -vs-)    Civil Action No.  16-311
)
CAROLYN W. COLVIN,)
COMMISSIONER OF SOCIAL SECURITY,)
)
        Defendant.)

AMBROSE, Senior District Judge

## ORDER OF COURT

AND now, this 19th day of January, 2017, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (ECF No. 9) is denied and Defendant's Motion for Summary Judgment (ECF No. 11) is granted.

                       BY THE COURT:

                       s/ Donetta W. Ambrose
                       Donetta W. Ambrose
                       United States Senior District Judge